2003 OK 17

Sheryl YSBRAND and Mary Cooney, individually and on behalf of all others similarly situated, Appellees,

v.

DAIMLERCHRYSLER CORPORATION, a Delaware corporation, individually and as successor in Interest to Chrysler Corporation and Chrysler Corporation, a Delaware corporation, individually, Appellants.

No. 97,469.

Supreme Court of Oklahoma.

Feb. 25, 2003.

Rehearing Denied Nov. 6, 2003.

620

Clyde A. Muchmore, Harvey D. Ellis, Jr., Courtney K. Warmington, Crowe & Dunlevy, Oklahoma City, OK, Peter W. Herzog, III, Bryan Cave, St. Louis, MO, Thomas G. Wolfe, Lyndon W. Whitmire, Phillips, McFall, McCaffrey, McVay & Murrah, Oklahoma City, OK, for Appellants.

Harry Scoufos, Sallisaw, OK, Darleen Jacobs, New Orleans, LA, James Minge, New Orleans, LA, Joseph J. McKernan, Baton Rouge, LA, Patrick W. Pendley, Plaquemine, LA, Robert E. Reeves, Lexington, KY, Anthony Majestro, Masters & Taylor, Charleston, WV, Stephen E. Van Gaasbeck, San Antonio, TX, for Appellees.

HODGES, J.

¶ 1 This opinion reviews the trial court's determination that this dispute meets the requirements for a class action found at Title 12, section 2023, of the Oklahoma Statutes. The class certification order is affirmed as to the warranty claims asserted but is reversed as to the claim for fraud and deceit.

¶ 2 Defendant, DaimlerChrysler, is a Delaware corporation with its principal place of business in Michigan. It manufactured over one million 1996 and 1997 model "minivans" equipped with front passenger seat air bags. Plaintiffs, each an owner of one of the minivans, have asserted Uniform Commercial Code claims for "breach of express warranty," "breach of implied warranty of merchantability," and "breach of implied warranty of fitness." In addition, they assert a claim for "fraud and deceit."

¶ 3 Plaintiffs' claims are based on their assertion that the front passenger seat air bags are defective due to "1) their propensity to deploy with overly aggressive force and 2) their propensity to deploy during a low speed collision." Plaintiffs further assert that DaimlerChrysler failed to warn purchasers that this defect has the potential to kill or seriously injure a child or small adult seated in the front passenger seat.[1] According to Plaintiffs, there are air bags available which de-

---

1. Plaintiffs' claim for fraudulent misrepresentation is based not on a failure to warn of the dangers of air bags generally. Rather, the claim is based on the failure to warn small adults and children over 12 of the dangers of over aggressive deployment of the air bags and their tendency to deploy at low speed impacts.

ploy with less force and at higher collision speeds. They claim that these bags are currently used as replacements when a bag has been deployed. Plaintiffs seek damages in an amount sufficient to allow owners to install the "safer" air bags or, in the alternative, replacement of the "defective" air bags by DaimlerChrysler.

¶ 4 Following initial discovery and a hearing, the trial court issued a twenty-one page order certifying a class consisting of Plaintiffs and

> [a]ll entities and adult persons domiciled or residing in any of the fifty states of the United States of America or in the District of Columbia, who purchased and who, according to motor vehicle registration records maintained by their respective states or districts of residence or domicile, can be identified as the current owner of at least one (1) model year 1996–1997 "minivan" automobile marketed by defendant as Chrysler Town & Country or Chrysler Minivan or Plymouth Voyager or Plymouth Grand Voyager or Dodge Caravan, which was manufactured by defendant for sale in any of the fifty states of the United States of America or the District of Columbia, or which defendant marketed in any of the fifty states of the United States of America or the District of Columbia as a product of its own manufacture, which was configured at the time of original sale or occupancy by at least five (5) passengers, and which contains on the driver side and/or passenger side of the forward seating area a passive restraint system commonly known as an "air bag," which employs a fabric-covered envelope designed to expand rapidly with sodium azide or other gases and

thus cushion a front-seat occupant when the system is activated by a sensor during a frontal collision.

Excluded from the class were (1) those who have suffered personal injury from air bag deployment, (2) DaimlerCrysler employees and affiliates, (3) judges and judicial personnel, (4) those who have had their air bags deactivated, and (5) those who had the original air bags replaced.[2] DaimlerChrysler now appeals the class certification order and the matter has been retained for this Court's review.

¶ 5 A trial court's class certification order is reviewed for abuse of discretion. *Scoufos v. State Farm Fire & Cas. Co.*, 2001 OK 113, 41 P.3d 366, 367. "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Patel v. OMH Med. Ctr. Inc.*, 1999 OK 33, 987 P.2d 1185, 1194. If the record does not demonstrate that the requisites for class action have been met, the trial court has abused its discretion. *Greghol Ltd. Partnership v. Oryx Energy Co.*, 1998 OK CIV APP 111, 959 P.2d 596, 598. "The pragmatically correct action, in the face of a close question as to certification, has been said to sustain certification because if it develops later during the course of the trial that the order is ill-advised, the order is always (prior to judgment on the merits,) subject to modification." *Perry v. Meek*, 618 P.2d 934, 940 (Okla.1980).

¶ 6 Class action is a procedural device provided by Title 12, section 2023, of the Oklahoma Statutes.[3] It permits plaintiffs to

---

2. The trial court's class certification followed the litigation of similar issues in Louisiana and unsuccessful attempts to remove this case to federal court. The decision in *In re Air Bag Products Liability Litigation*, 7 F.Supp.2d 792 (E.D.La. 1998), involved allegations of air bag defects against several automobile manufacturers and dealers. All claims were dismissed or summarily adjudicated in favor of defendants under Louisiana and Texas law. No class certification was involved. Thus, nothing about that decision impacts the issue of class certification presented in this litigation.

The class certification also followed the refusal of the National Highway Traffic Safety Administration (NHTSA) to further investigate following

its determination that vehicles, including 1996 Chrysler minivans, "had rates of air bag deployments per 100 collision claims that are similar to that of many other vehicles." In doing so, NHTSA noted its "need to allocate and prioritize [its] limited resources."

3. Section 2023 provides:
A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
1. The class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B.   CLASS ACTIONS MAINTAINABLE.  An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

a.  inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

b.  adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:

a.  the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b.  the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c.  the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d.  the difficulties likely to been countered in the management of a class action.

C.   DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.  An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice shall advise each member that:

a.  the court will exclude him from the class if he so requests by a specified date,

b.  the judgment, whether favorable or not, will include all members who do not request exclusion, and

c.  any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) members, but the members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified.  Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class.

3. The judgment in an action maintained as a class action under paragraphs 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class.  The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph 2 of subsection C of this section was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

4. When appropriate:

a.  an action may be brought or maintained as a class action with respect to particular issues, or

b.  a class may be divided into subclasses and each subclass treated as a class.  The provisions of this section shall then be construed and applied accordingly.

D.   ORDERS IN CONDUCT OF ACTIONS.  In the conduct of actions to which this section applies, the court may make appropriate orders:

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. Imposing conditions on the representative parties or on intervenors;

4. Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

"vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar., Nat'l Bank v. Roper*, 445 U.S. 326, 338, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Section 2023 requires, as does its federal counterpart; numerosity, commonality, typicality, and adequacy of representation. In addition, the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at § 2023(B)(3).

¶ 7 DaimlerChrysler challenges the trial court's determination that each of these requirements was demonstrated by Plaintiffs. Its challenge is focused primarily on whether common questions of law and fact predominate and whether a class action is superior to other available methods of adjudicating the controversy. DaimlerChrysler also argues that the class representatives and their counsel are inadequate.

## I. COMMON ISSUES OF LAW OR FACT

### A. Issues of Law

¶ 8 DaimlerChrysler argues that common issues of law or fact do not predominate because varying state laws will apply to the asserted claims and defenses. It cites *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, 9 P.3d 683, in which this Court found no abuse of discretion in the trial court's refusal to certify a class for lack of predominating issues. The proposed class consisted of private aircraft owners who alleged four different product defects against multiple defendants in different states. The matter required application of differing terms in hundreds of nonuniform aircraft purchase contracts. *Id.* at 690–691. Because the substantive law of numerous states applied to issues which were not common to the entire class, there was no predominance and the trial court did not err in refusing to certify the class. *Id.*

¶ 9 In this matter the trial court determined that "the alleged choice of law problems identified by [DaimlerChrysler did] not bar certification." It relied upon *In re Bridgestone/Firestone, Inc. Tires Liability Litigation*, 155 F.Supp.2d 1069 (S.D.Ind. 2001), which granted class certification upon a finding of predominance.

¶ 10 In *Firestone*, a federal district court sitting in Indiana determined which state's substantiative law applied to a nationwide state law class action. Buyers had asserted tort and contract claims against Ford Motor Co. and Bridgestone/Firestone, Inc. for alleged tire defects on Ford's Explorer model sport utility vehicle. The court reasoned that because "the relationship between the parties [was] simply that of buyer and seller," the place where the products were purchased was not significant to the claims for product defect. *Id.* at 1082. Rather, it was "the conduct of Defendants as manufacturers" which was the focus of the litigation. *Id.* Therefore, the law of Michigan and Tennessee, the principal places of business of the manufactures, controlled.[4]

---

5. Dealing with similar procedural matters. The orders may be combined with an order under Section 16 of this act and may be altered or amended as may be desirable from time to time. E. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

4. The Court of Appeals for the Seventh Circuit reversed the decision. *See In re Bridgestone/Firestone Inc.*, 288 F.3d 1012 (7th Cir.2002) *cert. den.*

537 U.S. 1105, 123 S.Ct. 870, 154 L.Ed.2d 774 (2003). It did so based on its determination that "Indiana is a lex loci delicti state: in all but exceptional cases it applies the law of the place where harm occurred." *Id.* at 1016. As a result, "Indiana's choice-of-law rule selects the 50 states and multiple territories where the buyers live, and not the place of the sellers' headquarters, for these suits." *Id.* at 1018. Thus, "[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *Id.* Although the Seventh Circuit rejected the lower court's conclusion as to which choice of law rule Indiana utilizes, the lower court's analysis under a most significant relationship test remains persuasive.

¶ 11 The trial court's application of *Firestone* to this matter evidences its intent to apply the substantive law of Michigan, DaimlerChrysler's principal place of business, to the claims and defenses asserted. Application of Oklahoma's choice of law rules supports that conclusion.

### 1. Choice of Law—UCC Claims

■■ ¶ 12 The "most significant relationship" test applies to an action for breach of warranty in a sale of goods under Article 2 of the UCC. *See Collins Radio Co. v. Bell*, 623 P.2d 1039, 1046–47 (Okl.Civ.App.1980) ("The same rationale for accepting the [most significant relationship test] for torts dictates that its application should be made to actions that fall under Article 2 of the Uniform Commercial Code.") *See also Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 795 (Okla.1991) ("[T]he UCC supports the most significant relationship test as applied in *Collins Radio*.") This test is guided by principles and contacts from the Restatement (Second) of Conflicts (1971). It determines which state's law is most directly connected to the parties and the transaction.

■ ¶ 13 Under section 6 of the Restatement, the factors relevant to any choice of law decision include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The contacts to be considered in applying these principles to an issue in contract[5] include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*The contacts are to be evaluated according to their relative importance with respect to the particular issue.*

*Id.* at § 188(2) (emphasis added). However, a third provision, section 191, applies to a sale of interests in chattel. "So in a contract for the sale of goods the most significant contact is the place of delivery unless another state has a more significant relationship." *Collins Radio*, 623 P.2d at 1047. As comment f. to section 191 explains: "On occasion, a state which is not the place of delivery will nevertheless, with respect to the particular issue, be the state of most significant relationship to the transaction, the parties and the chattel and hence the state of the applicable law." The particular dispute in this matter presents such an occasion in which "the local law of some state other than that of delivery should be applied in any event because of the intensity of the interest of that state in the determination of the particular issue." *Id.*

¶ 14 All 50 states and the District of Columbia bear some relationship to the parties and transactions in this dispute by virtue of the nationwide sales of the minivans. The question becomes whether the relationship of each state where the vehicles were purchased is more significant to the parties and this litigation than that of Michigan, the principal place of business of DaimlerChrysler.

■ ¶ 15 The *Restatement's* section 188(2) contacts of the place of contracting, the place of negotiation and performance, and the location of the subject matter are of diminished significance to the sales of the minivans. The UCC warranties are not something which is negotiated in the purchase of a new car. Thus, the relative interest of each buyer's home state in applying its version of the UCC is more or less equal.

5. This rule applies only in situations where the parties have not chosen the applicable law. The parties have not directed this court to a choice of law provision in their contract.

By contrast, Michigan's interest in having its regulatory scheme applied to the conduct of a Michigan manufacturer is most significant. Michigan is where the decisions concerning the design, manufacture, and distribution of the minivans were made. Michigan is the only state where conduct relevant to all class members occurred. The principal place of DaimlerChrysler's business is the most important contact with respect to the UCC warranty claims.

¶ 16 The selection of Michigan law furthers the relevant factors stated in section 6 of the *Restatement.* The needs of the interstate system and the basic policies of predictability and uniformity of result require that the issue of product defect be determined in one forum with one result rather than in 51 jurisdictions with the very real possibility of conflicting decisions. While the interest of each home state in applying its local law is significant, Michigan's interest in the conduct of its manufacturer, and thus its connection to the warranty issues, is greater. Michigan law applies. It should be noted that this conclusion is consistent with the constitutional imperative that "for a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (quoting *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–313, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)).

### 2. Choice of Law—Fraud and Misrepresentation

¶ 17 Section 148 of the *Restatement*[6] applies to actions to recover pecuniary damages for false representations whether fraudulent, negligent, or innocent. Subsection (2) applies to this dispute because the nationwide representations in DaimlerChrysler's advertising were made in states outside each class member's home state. The home state is where each class member acted in reliance on those representations by purchasing a minivan. Thus, this Court is directed to consider:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

**6.** § 148. Fraud and Misrepresentation

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where the plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

The comments to subsection (2) describe (a), (b), (c), and (d) as the "more important of these contacts." Comment j. articulates the general approach:

> If any two of the above-mentioned contacts, apart from the defendant's ... place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues. So when the plaintiff acted in reliance upon the defendant's representations in a single state, this state will usually be the state of the applicable law, with respect to most issues, if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is the state of plaintiff's domicil....

¶ 18 In this matter, each class member presumably received the representation in their home state, their place of domicile. Therefore, the contacts point to each class member's home state for the applicable law. Applying the law of 51 jurisdictions to the fraud claim presents an overwhelming burden which would make the class unmanageable and a class action determination of that claim inappropriate. The class action certified by the trial court will go forward only on the warranty claims asserted.

### B. Issues of Fact

¶ 19 The trial court found that the operative facts giving rise to the claims against DaimlerChrysler raise two questions which are common to the entire class: (1) whether the air bags are defective and (2) whether DaimlerChrysler withheld information concerning the alleged defect from those who purchased the minivans. As the trial court observed, "[t]he resolution of these issues will be applicable to each and every class member and will be dispositive of every class member's claim." As the fraud claim is no longer part of the class action, factual disputes concerning that claim no longer present litigable issues to be resolved.

¶ 20 DaimlerChrysler argues that the need for individual proof of each class member's reliance on the express warranty defeats predominance. Plaintiffs respond that any need for particularized proof of reliance does not defeat the commonality and typicality of the issue of product defect.

¶ 21 Whether individual findings of reliance are required goes to the merits of the claims. It is a question of Michigan law. A need for individual findings would not, however, defeat class certification. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Lobo Exploration Co. v. Amoco Productions,* 1999 OK CIV APP 112, 991 P.2d 1048, 1055 (quoting *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996).) *See also Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001) ("[W]here the lawsuit challenges a ... practice or policy that affects all of the putative class members .... individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality."); *Newton v. Merrill Lynch,* 259 F.3d 154, 183 (3d Cir.2001) (It is not required that "class members share every factual and legal predicate to meet the commonality and typicality standards."). The trial court remains free to maintain the class with respect to particular issues or create subclasses should the need arise. *See* Okla. Stat. tit 12, § 2023(C)(4) (2001).

## II SUPERIORITY

### A. Class Action versus Administrative Remedy.

¶ 22 DaimlerChrysler argues that a class action is not superior because the National Traffic and Motor Vehicle Safety Act impliedly preempts this warranty and common law tort action. Thus, it urges, the National Highway Traffic Safety Administration (NHTSA) must adjudicate this controversy. The Act, however, expressly provides that compliance with its provisions does not immunize a manufacturer from liability under common law or for warranty claims. 49 U.S.C. § 30103.

¶ 23 DaimlerChrysler also argues that, without regard to implied administrative preemption, the administrative remedy of a

NHTSA complaint is superior to a class action. The argument must fail.

¶ 24 A class action may be maintained only when it is "superior to other *available* methods for the fair and efficient adjudication of the controversy." Okla. Stat. tit. 12, § 2023(B)(3) (2001) (emphasis added). There is no administrative method of adjudication available to Plaintiffs. The NHTSA has declined to investigate further. *See supra* n. 1. An alternate method for adjudication must be *available* in order for it to be superior.

¶ 25 The question then becomes whether class action is superior to individual litigation. As the trial court found, the individual claims are not substantial enough to support individual litigation. In addition, the prosecution of separate individual actions would inevitably result in inconsistent results.

### B. Logistics of Class Management

¶ 26 Contrary to the assertion of Daimler-Chrysler, a "very expensive and time consuming vehicle by vehicle inspection" of each minivan is not required in order to determine whether an owner is a class member. The class consists only of minivans configured for five or more passengers which have not had the air bags deactivated or replaced. A determination of whether a minivan retains an active factory equipped air bag can be made at the time of replacement of the air bag should the Plaintiffs prevail on the issue of product defect.

¶ 27 There will be logistical problems in any nationwide class action. The fact that travel for counsel, parties, and witnesses will be necessary would be true no matter where the action was pursued. Plaintiffs have chosen Sequoyah County. None of the logistical problems, however, prevent the trial court from resolving this dispute as a class action. As the trial court observed, the advantage of adjudicating the common issues in a single proceeding far outweighs the logistic demands of class treatment.

## III. ADEQUATE PROTECTION OF THE INTERESTS OF THE CLASS

¶ 28 Section 2023(A)(4) requires that a class action may be maintained only if "[t]he representative parties will fairly and adequately protect the interests of the class." This requirement is met when the record demonstrates that the class representatives interests do not conflict with those of the class and that the class representatives will fully and effectively represent the interests of the class. *See Black Hawk Oil,* 969 P.2d at 346 & 347.

¶ 29 DaimlerChrysler asserts that "the class representatives and their counsel are inadequate." Yet, it fails to identify any divergence between the interests of the class representatives and those of the class. Rather, DaimlerChrysler suggests that Plaintiffs are inadequate class representatives because they were solicited to merely lend their names to a suit entirely controlled by Plaintiffs' counsel.

¶ 30 The record in this matter supports the trial court's finding that no improper solicitation of Plaintiffs occurred as well as its findings that Plaintiffs are adequately informed as to the facts of the case, their responsibilities as class representatives, and their knowledge of the litigation. As class representatives, Plaintiffs are not required to have an attorney's knowledge of the litigation.

¶ 31 The trial court's finding concerning Plaintiffs' counsel is also supported by the record. The trial court did not, as DaimlerChrysler claims, merely parrot unsupported assertions made by Plaintiffs' counsel concerning counsels' experience and success in litigation when they drafted the class certification order for the judge's signature.[7] The trial court based its conclusion that counsel was competent to prosecute the claims on counsels' *curriculum vitae* and on the fact that some of the counsel had litigated class actions in that court. The trial court did not abuse its discretion in determining

---

7. This Court rejects DaimlerChrysler's suggestion that there is something improper or irregular in a trial judge signing an order which has been prepared by the prevailing party.

that the class representatives and their counsel are adequate to protect the interests of the class.

## CONCLUSION

¶ 32 This Court's review of the decision to certify this matter as a class action reveals no abuse of discretion as to the warranty claims.[8] Common questions of law and fact predominate, class action presents a superior method for adjudicating the common issues, and the representative parties and their counsel are adequate to protect the interests of the class. This Court expresses no opinion as to the merits of any of the remaining claims and defenses asserted.

AFFIRMED IN PART; REVERSED IN PART.

¶ 33 OPALA, V.C.J., LAVENDER, KAUGER, SUMMERS, BOUDREAU, JJ., concur.

¶ 34 WATT, C.J., HARGRAVE, J., concur in part; dissent in part.

¶ 35 WINCHESTER, J., dissents.

---

8. The class certification remains subject to modification and "may be altered or amended before the decision on the merits." Okla. Stat. tit. 12, § 2023(C)(1) (2001). If necessary the class "may be divided into subclasses and each subclass treated as a class." *Id.* at § 2023(C)(4).