RIPP v. OKLAHOMA COMMUNICATIONS SYSTEMS
2023 OK CIV APP 3
Case Number: 119127
Decided: 04/22/2022
Mandate Issued: 02/16/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2023 OK CIV APP 3, __ P.3d __

 

SABRINA RIPP and C. RASH CONSTRUCTION, Plaintiffs/Appellees,
v.
OKLAHOMA COMMUNICATIONS SYSTEMS, INC., a/k/a TDS, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
MAYES COUNTY, OKLAHOMA

HONORABLE SHAWN S. TAYLOR, TRIAL JUDGE

AFFIRMED

Will K. Wright, Jr., WRIGHT LAW, PLC, Claremore, Oklahoma, for Plaintiffs/Appellees

Jon E. Brightmire, Lewis N. Carter, Lauren R. Myers, DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P., Tulsa, Oklahoma, and

Eric S. Mattson (pro hac vice), Angelo J. Suozzi (pro hac vice), SIDLEY AUSTIN LLP, Chicago, Illinois, for Defendant/Appellant

JOHN F. FISCHER, CHIEF JUDGE:

¶1 The defendant, Oklahoma Communications Systems, Inc., a/k/a TDS (TDS), appeals an Order Regarding Class Action Certification, which certified two classes in an action brought by the plaintiffs, Sabrina Ripp and Rash Construction, Inc. (RCI). TDS focuses its appellate argument on the weight of the evidence introduced at the class certification evidentiary hearing and argues that the Plaintiffs failed to prove the allegations necessary to obtain certification. This focus is improper under the applicable standard of review. The issue to be resolved in this appeal is a legal one: does the Plaintiffs' petition, not the evidence produced at the class certification hearing, "contain[] factual allegations sufficient to demonstrate a plausible claim for relief. . . ." 12 O.S. Supp. 2013 § 2023

BACKGROUND

¶2 TDS is a provider of internet services in small Oklahoma communities and rural areas. Ripp and RCI were internet customers of TDS. Since the inception of this lawsuit, both moved to other locales and are no longer customers. Ripp was a residential customer and RCI was a business customer.

¶3 Business customers have a written contract with TDS, residential customers do not. TDS checks its system for internet speed when accepting a new customer but does not routinely run speed tests on its system. TDS also retains recordings of customer calls regarding service. While they were customers, both Ripp and RCI had continual complaints about their internet speed. They allege that they did not receive the internet speeds that TDS was contractually obligated to provide. They filed this case to recover damages for that alleged breach of contract and sought to certify a class of similarly situated plaintiffs.

¶4 The district court conducted an evidentiary hearing on the Plaintiffs' class certification motion. At that hearing, Carl Rash, owner of RCI, testified that RCI had a written contract with TDS which provided that RCI would receive an internet speed of "up to" 10 mbps. Rash interpreted this provision to mean that 10 mbps was one tier and that TDS had other tiers which had higher or lower internet speeds. He expected to receive 10 mbps speed and was billed for that speed. The contract also contained a warranty that the service would be provided in a good and workmanlike manner. Rash testified that the initial service was satisfactory, but when he moved his office from town to a rural location, the internet speed was often zero or 1 mbps. Rash registered many complaints with TDS and his company lost business because of low or no internet service. He stated that the service was not provided in a good and workmanlike manner.

¶5 Ripp's testimony and records show that she did not have a written contract with TDS. TDS billed her monthly for the contracted rate. The "up to" language in TDS's business contracts was not on the invoices Ripp received. Initially, she purchased the lowest tier of service but upgraded several times, eventually to the 5 mbps tier. Ripp experienced substantially lower speeds than 5 mbps. Ripp complained on numerous occasions without satisfaction. Ripp testified that TDS representatives told her their system was overloaded. Ripp kept records of her own speed tests which showed that TDS did not provide the 5 mbps she contracted to receive. Ripp investigated and learned that other customers also experienced low internet speeds.

¶6 TDS admitted that only its written contracts contained the "up to" language but argued that was a term of its residential customer contracts as well because its advertisements contained that language. In addition, TDS introduced evidence to show that the internet speed a customer received was the result of many factors, including the customer's own equipment and other factors over which TDS had no control.

¶7 After the evidentiary hearing, the district court entered extensive findings of fact and conclusions of law. The district court found that internet speeds are controlled by several factors. TDS can control some of the factors, some are controlled by the customer, and some are out of the control of both TDS and the customer. The district court found that TDS's commercial and residential customers received less internet speed than they paid for and certified two classes of plaintiffs:

1. Residential. [D]efined as all persons in the State of Oklahoma that are current or former customers of TDS who purchased TDS Oklahoma Internet Service that received speeds less than what they paid for from April 13, 2014, to present.

2. Commercial, [D]efined as all persons in the State of Oklahoma that are current or former customers of TDS who purchased TDS Oklahoma Internet Service under a signed written contract that includes an express written warranty as to received speeds and failed to receive speeds that they paid for from April 13, 2011 to present.

The court named Ripp and RCI as the respective class representatives. TDS appeals the class certification order.

STANDARD OF REVIEW

¶8 Effective September 10, 2013, the Oklahoma Legislature changed the standard of review for orders certifying a class action from the abuse-of-discretion standard to de novo review of the district court's ruling on class certification. See Marshall Cnty. v. Homesales, Inc., 2014 OK 8812 O.S. Supp. 2013 § 2023Id. ¶ 7. The "fact" being determined is only a "forecast" of the evidence that actually will be produced at trial. Burgess v. Farmers Ins. Co., Inc., 2006 OK 66151 P.3d 9212 O.S. Supp. 2013 § 2023Homesales, 2014 OK 88

ANALYSIS

¶9 The Plaintiffs allege that TDS failed to provide the speed of internet service they contracted with TDS to receive, and that breach of contract affected all of TDS's customers, i.e., the members of the prospective class. TDS defends by arguing that its contract only required it to provide "up to" the internet speed stated in its contracts and that providing internet speed less than the stated rate was not, therefore, a breach of contract. TDS also argues that some of its customers' personal equipment, as well as other factors beyond its control, prevented customers from receiving the speed of internet service they contracted to receive.

¶10 In response to the Plaintiffs' motion to certify a class action, the district court conducted an evidentiary hearing during which evidence was introduced, and two witnesses testified, the proposed class representatives Sabrina Ripp and Zach Rash. During argument, Plaintiffs' counsel identified four legal theories warranting class certification: (1) violation of the Oklahoma Consumer Protection Act, (2) unjust enrichment, (3) breach of the implied contract between TDS and its residential customers, and (4) breach of the written contract between TDS and its commercial customers. The district court found that TDS "sold internet service to individuals and businesses on the basis of an 'up to' [mbps] basis." According to the district court, that fact issue is common to all of the Plaintiffs' claims. TDS argues its contract required it only to deliver any internet speed "up to" the speed stated in the contract, not the exact amount stated.

¶11 The district court found: "After review of the submitted material, evidence, the contents of the file and arguments of counsel," that the Plaintiffs had stated a plausible claim for relief. The court certified a class of commercial customers and a class of residential customers who claimed to have received internet service at lower speeds than for which they paid. In this appeal, TDS argues that the district court erred because the Plaintiffs have failed to satisfy the commonality requirement of section 2023(A)(2) and the predominance and superiority requirements of section 2023(B)(3).12 O.S. Supp. 2013 § 2023

I. Section 2023(A)(2) Commonality: "There are questions of law or fact common to the class."

¶12 "One or more members of a class may sue . . . on behalf of all only if: . . . (2) There are questions of law or fact common to the class." 12 O.S. Supp. 2013 § 2023Scoufos v. State Farm Fire & Cas. Co., 2001 OK 11341 P.3d 366See Homesales, 2014 OK 88Wal-Mart Stores, Inc., v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011)).

¶13 According to its brief, TDS provides "over five" levels, or tiers, of internet speed "ranging from 1 megabyte per second ('Mbps') to 1 gigabyte per second (1,000 Mbps)." It provides these tiers of internet access to approximately 5,700 customers. From the evidence, those tiers appear to be 1.5 Mbps, 3 Mbps, 5 Mbps, 10 Mbps and 20 Mbps or more. TDS argues commonality is lacking because a common answer cannot resolve "the very first question the district court would have to answer in this case: What speeds was a customer promised?" TDS is only correct in the very narrow sense that it offered five different tiers of internet speed. TDS does not, as its argument suggests, offer 5,700 different levels of internet speed to its customers. More importantly, TDS only promised one of its five speed tiers to any particular customer. The district court anticipated that variations between commercial and residential customers or among residential customers could "lead the Court to develop subclasses as contemplated by 12 O.S. Supp. 2013 § 202312 O.S. Supp. 2013 § 2023

¶14 Consequently, there is no need, as TDS argues, for an "individualized inquiry into the circumstances of each customer's interactions with TDS." Regardless of the speed tier a customer purchased, the "core liability issue" can be resolved with the answer to a single question -- was TDS able to deliver the tier of speed it promised to that group of customers? Rephrased, in light of the Plaintiffs' allegations, the question common to all class members is whether TDS was incapable of delivering the tier of speed it promised to any group of customers because it sold internet services to more customers than TDS's infrastructure could accommodate. The district court found that evidence regarding whether TDS "could have provided the 'up to' service . . . is common to the class." TDS does not take issue with that finding, and that finding is not against the clear weight of the evidence.

¶15 Also fatal to TDS's argument, groups of individualized issues, e.g., which of the five tiers of internet speed a customer purchased, does not defeat class certification. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Ysbrand v. DaimlerChrysler Corp., 2003 OK 1781 P.3d 618cert. denied, 542 U.S. 937 (2004) (citations omitted). Here, the same event, failure to provide the internet speed required by the contract, is alleged to have resulted from the same course of conduct, "over-subscribing," and can be resolved by the same remedy, damages for breach of contract. This is a different issue from whether class members were able to access the internet speed TDS did provide, the focus of TDS's appellate argument.

¶16 In addition, TDS argues that the district court "misapplied the concept of 'commonality.'" That argument fails for two reasons. The first reason is also the central legal issue in this appeal. Commonality does not require, as TDS suggests, that any common questions be resolved by a common answer. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury. . . .'" Wal-Mart Stores, Inc., v. Dukes, 564 U.S. 338, 349-50. Here, the Plaintiffs allege the same injury -- breach of contract. The district court correctly found that the Plaintiffs stated a plausible claim for breach of contract.

¶17 The second reason is based on the evidence supporting the Plaintiffs' allegations. The Plaintiffs' claims are not based on a "known lack of capacity for the speeds promised . . . ." The Plaintiffs' claims are based on TDS's inability to provide the speed it sold because TDS "over-subscribed" or misrepresented its capability. The district court's order states that common questions include: "What 'up to' internet service was [TDS] capable of providing to customers at the time the service was initiated," and "Was [TDS] able and capable to provide the 'up to' internet service it advertised and sold to customers . . . ." In analyzing the "typicality" requirement of section 2023(A)(3), the district court found: "Charging for an 'up to' internet speed requires an ability to provide the stated 'up to'" speed. Only upon answering that question does the need for the determination of other legal and factual issues exist." Those findings are clearly supported by the Plaintiffs' allegations and the clear weight of the evidence produced at the class certification hearing.

¶18 For example, Plaintiffs allege that TDS was "not able to handle the volume of customers" with which TDS contracted. In support of this allegation, Ripp testified that, at first, she received the speed of internet service she purchased from TDS even as she upgraded from 1.5 mbps to 3 mbps and finally to 5 mbps.See Fent v. Oklahoma Natural Gas Co., 2001 OK 3527 P.3d 477

¶19 Rash testified that RCI originally received "satisfactory" service until he moved his office to a rural location. Then, RCI received "[s]low to no speeds at all." Nonetheless, TDS continued to charge RCI for 10 mbps. Rash produced a log of his weekly and sometimes daily complaints to TDS with the speed received noted in the log. TDS offered no evidence to contradict the evidence Rash provided.

¶20 TDS did not contradict these allegations or the evidence supporting them, but focused on the district court's finding of fact number 4, describing twelve different factors that TDS argued could affect the internet speed its customers received. The described factors potentially affecting the internet speed customers receive do not defeat class certification. The issue common to the class is whether TDS ever was able to deliver the internet speed it promised, not whether the speed of internet service TDS was able to deliver was affected by factors beyond TDS's control. Those are issues TDS raised as common defenses to some groups of Plaintiffs. They are appropriate for resolution only on a trial of the merits of this case, not at the class certification stage. "[I]nquiry into the merits is inappropriate when the court is deciding whether a class should be certified." Black Hawk Oil Co. v. Exxon Corp., 1998 OK 70969 P.2d 337Eisen v. Carlisle and Jacqueline, 417 U.S. 156, 94 S. Ct. 2140 (1974)).

¶21 Similarly, TDS takes issue with the district court's evaluation of the evidence supporting the Plaintiffs' allegations and points to contradictory evidence presented at the time of class certification. Resolving these fact issues is "inappropriate" at the class certification stage. Id. And, findings based on disputed facts involving the merits of this case are improper. Cuesta v. Ford Motor Co., 2009 OK 24209 P.3d 278Marshall Cnty. v. Homesales, Inc., 2014 OK 88

¶22 After the hearing, the district court found that "Plaintiffs have provided sufficient evidence to establish questions of law or fact common to the class required by 12 O.S. § 2023Homesales, 2014 OK 88

II. § 2023(B)(3) Predominance: "questions of law or fact common to the members of the class predominate."

¶23 Plaintiffs also allege, and the district court found, that the common questions of law and fact predominate over any individual issues in this litigation. For example, Plaintiffs allege such predominate issues include whether: TDS knew that the internet service it provided failed its own speed test to deliver the service class members contracted to receive; TDS negligently or intentionally misrepresented its ability to provide internet service to class members; and TDS's failure to provide the promised internet speed was a breach of warranty under Oklahoma contract law.

¶24 TDS argues, "for all the reasons explained above" that these issues cannot be resolved on a class-wide basis. But, TDS does not explain how its alleged failure to provide the level of internet speed that it contracted to provide, regardless of level, is an individualized issue incapable of common resolution. Class certification is appropriate if, as here, "the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Ysbrand v. DaimlerChrysler Corp., 2003 OK 1781 P.3d 618cert. denied, 542 U.S. 937 (2004) (citations omitted). Plaintiffs alleged, and produced evidence to show, that the reason TDS failed to deliver the speed it contracted to provide resulted from a common fact -- TDS "oversubscribed" the customers in its area and could not deliver the speed it agreed to provide. TDS failed to argue, much less show, that Plaintiffs' breach of contract allegation was not supported by the clear weight of the evidence produced at the hearing.

¶25 Instead, TDS argued that predominance was lacking with respect to the Plaintiffs' unjust enrichment and Consumer Protection Act theories of recovery. If, as this case proceeds, it turns out that class treatment of these theories of liability is inappropriate, the district court may modify its certification order to include only "particular issues." 12 O.S. Supp. 2013 § 2023See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011). As this Court previously held:

[A] class action may dispose of at least one claim common to all the parties in a more consistent and efficient manner. This is precisely why [section] 2023(C)(4)(a) [now (6)(a)] approves of class actions for particular claims. Requiring a class action to dispose of all claims between the parties would render the language of § 2023(C)(4)(a) meaningless.

Houck v. Farmers Ins. Co., Inc., 2010 OK CIV APP 12229 P.3d 551cert. denied January 25, 2010. See also Black Hawk Oil Co. v. Exxon Corp., 1998 OK 70969 P.2d 337accord Weber v. Mobil Oil Corp., 2010 OK 33243 P.3d 1Perry v. Meek, 1980 OK 151618 P.2d 934Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S. Ct. 1194 (1969)).

¶26 The district court found that TDS sells internet service based on speed and charges more to customers who contract for more speed. According to the district court, TDS tests its system to determine what speed a customer receives and "is aware of all things that affect speed." The court also found that "one defense of [TDS] is 'up to' is anything 'up to' the amount stated and even near zero qualifies as 'up to.'" TDS argues that there is a "common-sense" meaning of the term "up to" and, as long as it has provided any internet speed "up to" the amount a customer agreed to purchase, it has not breached the contract. TDS's argument concedes the predominance of this issue.

¶27 Finally, TDS does not argue that the Plaintiffs' factual allegations fail to state a plausible claim for class certification. TDS argues that the evidence produced at the hearing shows that the Plaintiffs' allegations are not true. Whether Plaintiffs' allegations are "true" will be determined at a trial on the merits of their claim. Black Hawk Oil Co. v. Exxon Corp., 1998 OK 70Marshall Cnty. v. Homesales, Inc., 2014 OK 88

¶28 The district court found that common issues "predominate over individual member issues." That finding is not against the clear weight of the evidence or result from an error of law. Id.

III. § 2023(B)(3) Superiority: "a class action is superior
to other available methods."

¶29 The district court based its ruling that a class action was the superior method to litigate the Plaintiffs' claims on two findings: (1) the claims of individual plaintiffs were small and unlikely to be pursued due to the anticipated cost of litigation unless they were aggregated; and (2) it would be impractical and a burden on the judicial system to individually manage and try approximately 5,700 claims of potential class members. These findings are consistent with Oklahoma case law. See, e.g., Ysbrand v. DaimlerChrysler Corp., 2003 OK 1781 P.3d 618cert. denied, 542 U.S. 937, 124 S. Ct. 2907 (2004); Houck v. Farmers Ins. Co., Inc., 2010 OK CIV APP 12229 P.3d 551

¶30 TDS does not address or contest the district court's findings or the evidence supporting the court's determination of superiority. Rather, TDS argues that superiority is lacking because the court would have to determine which customers were members of the class. To support this contention, TDS cites authority denying certification for "fail-safe" classes, i.e., those classes "where the definition of the class bases class membership on the ability to bring a successful claim on the merits." Gipson v. Sprint Commc'ns Co., L.P., 2003 OK CIV APP 8981 P.3d 65cert. denied, October 13, 2003.

¶31 This is not, however, a "fail safe" class. A fail-safe class is one in which the definition ensures that all class members will be successful. The district court's class definition does not guarantee that the Plaintiffs will prevail. For example, if the "up to" language in TDS's contracts is interpreted as only requiring TDS to deliver any level of internet speed "up to" the amount stated in its contracts, then all class members who received internet speeds less than the amount stated in their contract would be bound by that interpretation in favor of TDS. Likewise, all putative class members whose personal computer equipment was incapable of receiving the level of internet speed they contracted to receive would not be likely to prevail even though they "received speeds less than what they paid for."

IV. § 2023(A)(4) Adequacy of Class Representatives

¶32 Finally, TDS argues that Ripp and RCI are not adequate class representatives because they are no longer TDS customers. TDS cited authority for the proposition that a former customer was not an adequate class representative to seek forward-looking injunctive relief pursuant to statutes like 12 O.S. Supp. 2013 § 2023

¶33 Both Ripp and RCI have an interest in pursuing this litigation because their claims arose from an alleged breach of contract that occurred during the time period when they were TDS customers. If successful, they would be entitled to recover monetary damages for the time they were TDS customers. In addition, both Rash, on behalf of RCI, and Ripp voluntarily appeared at the class certification hearing even though they had previously terminated their contracts with TDS. Both testified that they were willing to continue to participate in the litigation and do what was required of class representatives. TDS did not challenge or take issue with this testimony.

¶34 The district court found that both Ripp and RCI would "fairly and adequately protect the interests of the class." 12 O.S. Supp. 2013 § 2023

CONCLUSION

¶35 It is not, as TDS argues, its "liability" that must be resolved in one stroke. " "'What matters to certification . . . is . . . the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc., v. Dukes, 564 U.S. 338, 350,131 S. Ct. 2541, 2551 (2011)(citation omitted). If the district court determines the "up to" language means any level up to the amount specified, then customers who paid for, but received less than, the tier of internet speed they contracted to receive will not have a claim. That is a central issue in this litigation and its determination will "drive the resolution of the litigation." Id. An interpretation of that contract language unfavorable to TDS will do so as well.

¶36 The district court's Order Regarding Class Action Certification is affirmed.

¶37 AFFIRMED.

RAPP, J., and BLACKWELL, J. (sitting by designation), concur.

FOOTNOTES

12 O.S. Supp. 2013 § 2023

Perry v. Meek, 1980 OK 151618 P.2d 934