2001 OK 113

Harry G. SCOUFOS IV,
Plaintiff/Appellee,

v.

STATE FARM FIRE AND CASUALTY
CO., Defendant/Appellant.

No. 94,395.

Supreme Court of Oklahoma.

Dec. 11, 2001.

Clyde A. Muchmore and Harvey D. Ellis, Jr., of Crowe & Dunlevy, Oklahoma City, OK; John A. Gladd and Gail Harris of Gladd, Smith & Harris, Tulsa, OK; and Joseph A. Cancila, Jr. and Heidi Dalenberg of Schiff Hardin & Waite, Chicago, IL, for appellant.

Sean Burrage, Stratton Taylor and Darrell Downs of Taylor, Burrage, Foster, Mallett & Downs, Claremore, OK, and Andrew P. Campbell and Janet R. Varnell of Campbell & Walker, Birmingham, AL, for appellee.

George P. Phillips and Stephen L. McCaleb for Oklahoma Insurance Department, Oklahoma City, OK, amicus curiae.

LAVENDER, J.

¶ 1 Resolution of today's cause requires the Court to measure the trial court's February 11, 2000 class-certification order against the prerequisites for issuing the same enunciated in 12 O.S.1991 § 2023(A) & (B).[1] In so doing we need not reach the merits of Harry Scoufos IV's [Scoufos, plaintiff, class representative or insured] claim. Nonetheless, determining whether the trial court applied the correct legal standards when it assessed § 2023's commonality, predominance and typicality requirements for class certification necessitates identification and review of the core liability issues which the class asserts against State Farm Fire and Casualty Co. [State Farm or insurer]. While we review a trial court's class-certification order for abuse of discretion,[2] we review de novo whether the trial court applied the correct legal standard to grant certification. If the trial court incorrectly decided a question of law in certifying the class, reversal will be ordered.

## I

### FACTS AND PROCEDURAL HISTORY

¶ 2 In 1997 Scoufos purchased a State Farm "HO–W" replacement-cost homeowners insurance policy to cover a residence he was purchasing in Coweta, Oklahoma. The purchased policy was a multi-peril policy covering losses not only to the primary dwelling but also to detached extensions such

---

1. The pertinent provisions of 12 O.S.1991 § 2023 are:

   A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

   1. The class is so numerous that joinder of all members is impracticable;

   2. There are questions of law or fact common to the class;

   3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

   4. The representative parties will fairly and adequately protect the interests of the class.

   B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

   1. The prosecution of separate actions by or against individual members of the class would create a risk of:

   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

   b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

   * * *

   3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

2. *Fent v. Okla. Nat. Gas Co.*, 2001 OK 35, ¶ 12, 27 P.3d 477, 480. See also *KMC Leasing, Inc. v. Rockwell Standard Corp.*, 2000 OK 51, 9 P.3d 683, 688, where the Court held that "an abuse of discretion occurs when a court has, 'based its decision on an erroneous conclusion of law. . . .'" *Id.*

as garages, sheds, fences and other structures. The extension coverage was in an amount equal to ten percent (10%) of the dwelling's coverage. The policy's terms were approved by the Oklahoma Department of Insurance [ODI] and the charged rates were sanctioned by the Board of Property and Casualty Rates. Scoufos purchased $83,000 of coverage to satisfy his mortgage-lender's coverage-requirements. The amount of replacement-insurance purchased exceeded State Farm's estimated replacement cost ($79,400) for the subject dwelling.

¶ 3 The gravamen of the class' suit is that State Farm overcharged the insureds for replacement-cost homeowners insurance in contravention of the terms of 36 O.S.1991 § 4804 triggering a statutory right-of-reimbursement. Scoufos—on behalf of himself and like-situated insureds—seeks reimbursement of the costs attributable to the alleged overinsurance (excess premiums) which he defines as equaling the difference between (1) the premiums charged for the issued insurance policy and (2) the costs of a policy with coverage limits equal to State Farm's estimate of replacement costs (measured at the time of the policy's purchase).[3] The class contends that the terms of 36 O.S.1991 § 4804[4] preclude State Farm from issuing *replacement-cost* insurance policies with coverage amounts which exceed at the time of the policy's issuance the "fair value of the property" insured.

¶ 4 When the present case was filed, Scoufos was employed as a lawyer by one of the firms representing the putative class. Also,

his father—a senior partner in the same firm—was one of the plaintiff's counsel. [While today's case was pending on appeal, the elder Mr. Scoufos resigned as counsel for the certified class.[5]] State Farm objects to Scoufos' designation as class-representative, arguing that his employment coupled with his father's services to the class presents a potential conflict of interest which disqualifies him from serving in the designated capacity.

¶ 5 State Farm seeks the class action's dismissal asserting (among other reasons) that the trial court is without jurisdiction to hear the matter. The defendant argues that the ODI is vested with authority to hear the cause and that allowing the same to proceed in the district court contravenes those provisions of the Oklahoma Administrative Procedures Act [OAPA], 75 O.S.1991 §§ 250.1 *et seq.*, which require a plaintiff to exhaust administrative remedies before proceeding to the district court. State Farm also contends that the certification requirements of § 2023 were not met in that individual class-member claims are too varied and distinct from a evidentiary-proof perspective to be litigated as a unit.

█ ¶ 6 After a hearing the trial court certified as a class "all current or former policyholders in the [S]tate of Oklahoma … whose residential dwelling was insured by State Farm … where State Farm's records assign an insurance to value ratio greater than 100%."[6] The trial court further found that there were questions of law and/or facts common to the class members which predom-

---

**3.** State Farm uses "Insurance to Value Quarterly Usage Reports" to calculate the "insurance to value ratio" [IV ratio] for each residential policy it issues. If the IV ratio equals 100%, replacement costs—as defined by the policy's terms—for the insured dwelling are completely covered.

**4.** The pertinent terms of 36 O.S.1991 § 4804 provide:

No insurance company shall, knowingly, issue any *fire insurance policy* upon property within this state for an amount which, with any existing insurance thereon, exceeds the *fair value* of the property, nor for a longer term than five (5) years. *If buildings insured against loss by fire, and situated within this state, are totally destroyed by fire,* the company shall not be liable beyond the actual value of the insured

property at the time of the loss or damage, and if it shall appear that the insured has paid insurance premiums on an amount in excess of said actual value, the insured shall be reimbursed the proportionate excess of premiums paid on the difference between the amount named in the policy and said actual value, with interest at six percent (6%) per annum from the date of issue. [Emphasis added.]

**5.** The resignation of the elder Mr. Scoufos as class counsel was suggested, but not required, by the trial court in its class certification order. *See* February 11, 2000 class-certification order p. 17 n. 1.

**6.** *See* trial court's February 11, 2000 certification order.

inate over any questions affecting individual class members. In addressing whether the insureds met the requirements for class certification the trial court identified the rights granted under § 4804's terms and determined as a question of law that these statutory rights extended not only to owners of standard fire insurance policies but also to those persons who had purchased replacement-costs residential policies with multi-peril loss provisions.[7]

## II

## THE TRIAL COURT'S ASSESSMENT OF THE PARAMETERS OF THE STATUTORY RIGHT CREATED BY THE TERMS OF 36 O.S.1991 § 4804[8] IS FLAWED AS A MATTER OF LAW; HENCE, THE CLASS CERTIFICATION ORDER IS REVERSED

¶ 7 Although the defendant objects to the district court's jurisdiction over the plaintiff's claims [asserting failure to comply with OAPA requirement of exhaustion of administrative remedies], this issue need not be reached because the class-certification issues are dispositive of today's cause. Also, there is no need for the Court to reach the issue whether a private cause of action is in fact authorized by the terms of 36 O.S.1991 § 4804; hence, we do not.[9] Lastly, in deciding the propriety of the trial court's class-certification order we do not reach the issue whether § 4804's reference to "any fire in-

surance policy" is broad enough to encompass a homeowner's *multi-peril* replacement-cost policy.

¶ 8 The trial court based its class-certification order upon a perceived "common right"[10]-i.e., entitlement to reimbursement of alleged premium overpayments as defined by the terms of 36 O.S.1991 § 4804—enjoyed by those insureds owning residential replacement-cost homeowners policies in Oklahoma. Without addressing whether individual class members are entitled to assert the identified statutory right, identifying the parameters of the right which the class representative and putative class members attempt to press is critical to certification. It is against the legal standards articulated by § 4804's terms that the issues of (1) commonality [whether there are *common* questions of law and fact present among the individuals who would comprise the class] and (2) typicality [whether the class representative's claim and defenses are typical of those which would be asserted by the proposed class] are assayed. If any one of the prerequisites to class certification enunciated in 12 O.S.1991 § 2023(A) is not satisfied, certification is improper.[11]

¶ 9 In construing the relevant statutory provision (§ 4804) the Court is mindful that if a statute's language is clear and unambiguous, its terms are to be given their reasonable and sensible meaning.[12] When unambiguous statutory language is a case's focus, the law's employed lexicon constitutes the highest proof of legislative intent and

---

7. In defining the class size the trial court held: "State Farm's argument is premised on *a different class definition* than that proposed by Plaintiff. Plaintiff urges that 36 O.S. § 4804 prohibits an insurer from writing more insurance than it considers necessary to cover the replacement cost on the dwelling as determined at the time the policy is written. *The Court agrees with Plaintiff's reading of Section 4804.*" [Emphasis added.]

8. For the pertinent terms of 36 O.S.1991 § 4804 see *supra* note 3.

9. This result is correct for we decide today that even if a private cause of action were authorized, the class representative's claim is not typical of those which § 4804 would authorize against an insurer. Hence, class certification was improper.

10. We find persuasive the U.S. Supreme Court's legal reasoning in *Amchem Products, Inc. v.*

*Windsor,* 521 U.S. 591, 622–24, 117 S.Ct. 2231, 2249–50, 138 L.Ed.2d 689 (1997), where in assessing entitlement to class certification the Court focused its analysis upon *legal and/or factual questions common* to the plaintiffs rather than simply relying upon a "community of interests" held by putative class members. For an analysis of the "common right theory" as an underpinning of class action litigation, see Michael C. Protos, *An Epistemological Approach To Class Certification: A Classy Understanding of the Problems of Class Certification,* 42 Case W. Res. L.Rev. 1297, 1313–1315 (Fall 1992).

11. *Mattoon v. City of Norman,* 1981 OK 92, 633 P.2d 735, 736.

12. *Sullins v. American Medical Response of Okla., Inc.,* 2001 OK 20, ¶ 17, 23 P.3d 259, 263.

further construction is not mandated.[13] Also, if the statutory provision under review is part of an act, its meaning and legislative intent are ascertained by consideration of the *whole* act in light of its general purpose and objective.[14] Lastly, when a statutory right not existing at common law is implicated, the legislative intent and conditions imposed by the relevant statutory language are critical components of and predicates to assertion of such rights.[15]

¶ 10 The statutory right asserted by the class finds its genesis in the terms of § 4804. The right can be no broader than that intended by the Legislature. Here legislative intent is clearly reflected in the pertinent statutory language which provides:

> *If* buildings insured against loss by fire, and situated within this state, *are totally destroyed by fire,* the company shall not be liable beyond the actual value of the insured property at the time of the loss or damage, *and if* it shall appear that the insured has paid insurance premiums on an amount in excess of said actual value, *the insured shall be reimbursed* the proportionate excess of premiums paid on the difference between the amount named in the policy and said actual value.... [Emphasis added.]

What is not reflected in the class representative's understanding of the relevant statutory language is that the right to reimbursement being asserted *is conditioned upon the insured property's total destruction by fire.*[16] The trial court acknowledges along with the parties that ascertaining the true replacement cost of an insured's property is guesswork until such time as the property is lost. Obviously, the Legislature also understood this when it conditioned an insured's right to reimbursement for excess premiums upon the occurrence of an event of total destruc-

tion by fire. Such an event would trigger the replacement provided for by the purchased homeowners replacement-cost policy's terms and would provide a clear temporal marker for the prefatory computations which are necessary to figure the amount of excess premiums, if any, owed to a policyholder. The relevant statutory language is very clear in setting out two predicates—which must both be satisfied—to assertion of the created statutory right and the Court is without power to expand the conferred right beyond what the Legislature intended.

¶ 11 When the parameters of the right being asserted are fully understood, it becomes clear that prospective class members could include only those persons purchasing fire insurance policies covering property (in Oklahoma) which was totally destroyed by fire. The record clearly evidences that the claim being pressed by the class representative is not *typical* of claims which might be asserted by the putative class inasmuch as there is no representation that Scoufos has suffered any, much less total, loss of his property by fire. Hence, while others might be able to meet the two statutory predicates for reimbursement, the class representative's claim-as delineated by the record-falls short. As Scoufos's claim necessarily must proceed upon different facts and legal theory from the suggested § 4804 statutory right of recovery which the prospective class members assert, his claim is not typical of the class' and his appointment as class representative cannot be sustained.

¶ 12 In resolving today's cause we need not and do not reach nor make any pronouncement on the numerous other challenges raised by the parties' appeal.

### THE TRIAL COURT'S CLASS–CERTIFICATION ORDER IS REVERSED.

**13.** *Sullins, supra* note 12, 2001 OK at ¶ 17, 23 P.3d at 263; *Community Bankers Ass'n. of Okla. v. Okla. State Banking Bd.,* 1999 OK 24, ¶ 26, 979 P.2d 751, 757.

**14.** *Haney v. State of Okla.,* 1993 OK 41, 850 P.2d 1087, 1089.

**15.** *See County Bd. of Supervisors of Platte County v. Breese,* 171 Neb. 37, 105 N.W.2d 478, 484 (1960).

**16.** For the pertinent language in § 4804, see *supra* note 4.

¶ 13 HARGRAVE, C.J., WATT, V.C.J., HODGES, OPALA, KAUGER, BOUDREAU and WINCHESTER, JJ., concur.

¶ 14 SUMMERS, J., concurs in result.