2006 OK CIV APP 33

Edwin L. MARTIN, Plaintiff/Appellee,

v.

HANOVER DIRECT, INC., and LWI Holdings, Inc., Defendants/Appellants.

No. 96,715.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 25, 2005.

Rehearing Denied Jan. 3, 2006.

Certiorari Denied March 28, 2006.

Harry Scoufos, Law Offices, Sallisaw, OK, Janet Varnell, Campbell, Waller, McCallum & Loper, Birmingham, AL, for Plaintiff/Appellee.

Scott Rowland, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, George R. Dougherty, Grippo & Elden, Chicago, IL, for Defendants/Appellants.

Opinion by KEITH RAPP, Judge.

¶ 1 Trial court defendants, Hanover Direct, Inc. (Hanover) and LWI Holdings, Inc. (LWI) (collectively Defendants), appeal a trial court order granting the Motion for Class Certification filed by plaintiff, Edwin L. Martin (Martin).

## BACKGROUND

¶ 2 Hanover is a holding company incorporated in Delaware and headquartered in New Jersey. Hanover owns Hanover Brands, Inc. (Hanover Brands), which, in turn, owns several companies, including LWI, that run catalog businesses. LWI owns and apparently operates an Improvements catalog business.

¶ 3 Martin ordered two items, a circuit locator and a pole extension light bulb changer kit, via telephone from LWI's Improvements catalog on January 17, 2000. During the ordering process, Martin was informed that the total amount of his order was $80.39. This amount included shipping, handling, and a fifty-cent "insurance fee." He was not informed of the addition of the "insurance fee" to the order's final sum. The LWI catalog order form disclosed the existence of the fee and stated the reason for the insurance fee—"immediate replacement of any item that is lost or damaged."

¶ 4 Martin filed this class action suit in Sequoyah County District Court on behalf of himself and other customers who were assessed an insurance fee. He, as part of his action, alleged consumer fraud, common law fraud, breach of contract, unjust enrichment, and money lost and received.

¶ 5 The trial court, after a hearing, adopted Martin's proposed findings of fact and conclusions of law and granted the class

certification request. The trial court found that the class shall be maintained as a class action in accordance with 12 O.S.1991, § 2023(B)(2) and (B)(3). The court further ordered:

1. The "class" is defined as: All persons in the United States who are customers of any catalog or catalog company owned by Hanover Direct, Inc. and who have at any time purchased a product from such company and paid money which was designated to be an 'insurance' charge;

2. The class is so numerous that joinder of all its members is impractical;

3. There are questions of law and/or fact common to the class;

4. The claims of Plaintiff are typical of the claims of the class;

5. Plaintiff will fairly and adequately protect the interest of the class;

6. The questions of law and/or fact common to the members of the class predominate over any questions affecting only individual members;

7. A class action is superior to other available methods for the fair efficient adjudication of this controversy;

8. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The trial court certified Martin as class representative.

¶ 6 Defendants appeal.

### STANDARD OF REVIEW

¶ 7 This Court reviews a trial court's class certification order for abuse of discretion. *Scoufos v. State Farm Fire & Cas. Co.*, 2001 OK 113, ¶ 1, 41 P.3d 366, 367. "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 5, 81 P.3d 618, 622. The trial court abuses its discretion if the record does not support the conclusion that the prerequisites of a class action are met. *Id.*

### ANALYSIS

¶ 8 The dispositive issue before this Court is whether the trial court abused its discretion in granting Plaintiff's motion to certify the class.

¶ 9 The criteria for class certification are set forth in Title 12 O.S.2001, § 2023. Section 2023 provides in pertinent part:

### CLASS ACTIONS

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

   b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corre-

sponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

"A party seeking certification of a class has the burden of satisfying all four requirements of 12 O.S.1991 § 2023(A) and at least one of the criteria required by 12 O.S.1991 § 2023(B)." *Sholer v. State ex rel. Dept. of Public Safety*, 1999 OK CIV APP 100, ¶ 4, 990 P.2d 294, 296. Thus, Martin must show numerosity, commonality, typicality, predominance, and superiority to maintain a class action; each of these is discussed in subsequent subparagraphs.

### 1. Numerosity

■ ¶ 10 The court must examine the facts of each case to determine whether the class satisfies the numerosity requirement. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 8, 689 P.2d 299, 302. The class size alone is not determinative of this issue. *First Life Assur. Co. v. Mountain*, 1993 OK CIV APP 20, ¶ 5, 848 P.2d 1177, 1179.

■ ¶ 11 Martin alleged in his Memorandum in Support of Class Certification that the class was so numerous that joinder of all members was impracticable. Martin argued that "the fact that Defendants use form contracts and fail to waive their 'insurance' charge creates the inference that the class represents *hundreds of thousands if not millions* of individuals." Defendants have not specifically addressed Martin's argument regarding the numerosity prerequisite of Section 2023. Further, the trial court's Order states Defendants did not dispute the numerosity requirement. Thus, this Court finds this requirement has been met.

### 2. Commonality

■ ¶ 12 To satisfy the commonality prerequisite "the case must involve questions of law or fact common to the class which predominate over any questions affecting only individual members." *Shores*, 1984 OK 67 at ¶ 10, 689 P.2d at 302.

■ ¶ 13 This Court, having reviewed the opinion from the New Jersey Superior Court in a case factually similar to the present one, *Morris v. Brawn of California, Inc. d/b/a International Male, LLC; Hanover Direct, Inc.; Hanover Brands, Inc.; and The Company Store Group, LLC, successor-in-interest to Hanover Brands, Inc.*, Docket No. BER–L–8830–02[1] (February 14, 2005), finds it to be most instructive on the issue of commonality. In *Morris*, the New Jersey court concluded the plaintiff, Morris, could not establish commonality for purposes of a class action. The *Morris* court focused on the disparate treatment between absent potential class members and the plaintiff, Morris. The *Morris* court noted:

It is impossible to know with any certainty exactly what was said during the telephone conversation about the insurance charge. Although there may have been some scripted dialogue occasionally used by defendants' representatives, the individual discussions—and whether the insurance charge was mentioned at all—remain unknown. . . . In addition, since it is unknown what written resources, if any,—including a printed catalog—were used by plaintiff during his telephone encounter with Brawn's telephone representative, I cannot confidently conclude that his experience was in any way similar to what transpired with others who interacted with Brawn to buy merchandise. Finally, given the infinite variety of circumstances that consumers might have engaged in contractual interchanges using different means, the commonality quotient urged by plaintiff approaches the vanishing point.

*Id.* at 27–28.

¶ 14 The *Morris* court further stated that whether the consumer had a written catalog

---

1. This Court does not go into a factual analysis of the *Morris* case as the parties are familiar with the facts of that case.

or graphical web pages available during their telephone conversations would affect whether they suffered an alleged loss from an affirmative misrepresentation and not an omission, as alleged by the plaintiff, Morris. The *Morris* court concluded that "[t]hese overarching unanswered questions demand individualized investigations and assessments for potential absent class members' claims, thereby militating against commonality." *Id.* at 28. Thus, the *Morris* court held that "[c]ommonality is defeated by the particularized circumstances in which plaintiff interacted with Brawn." *Id.* at 29.

¶ 15 This Court is confronted with the same issues in the present case as was the *Morris* court. The proposed class members may have interacted with Defendants via completely different mediums—internet, telephone, catalog, United States Postal Service—and may have received varying information or notice of the insurance charge. This Court agrees with the *Morris* court that the commonality element required to sustain a class is "defeated by the particularized circumstances" in which Martin, and all the other unknown potential class members, interacted with Defendants. Based on the persuasive rationale set forth in *Morris*, this Court finds the commonality prerequisite under Section 2023 is not present here.

### 3. Typicality

▮▮▮▮ ¶ 16 "The typicality requirement is satisfied '[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented ... irrespective of varying fact patterns which underlie individual claims.'" *Melot v. Oklahoma Farm Bureau Mut. Ins. Co.,* 2004 OK CIV APP 25, ¶ 16, 87 P.3d 644, 647 (quoting *Ammons v. Am. Family Mut. Ins. Co.,* 897 P.2d 860, 863 (Colo.Ct. App.1995)). Typicality requires that the named plaintiff's individual claims are typical of those claims asserted by the members of the proposed class. *O'Neil v. Gencorp, Inc.,* 1991 WL 33316 (S.D.N.Y.1991). "Typicality ensures the interests of the class and the

class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182–83 (3rd Cir. 2001) (quoting *Barnes v. American Tobacco Co.,* 161 F.3d 127, 141 (3rd Cir.1998)).[2] This prerequisite focuses on the relation between the representative parties and the class as a whole. *Hassine v. Jeffes,* 846 F.2d 169, 177 n. 4 (3rd Cir.1988).

▮▮▮▮ ¶ 17 The *Morris* court held that the typicality requirement was not met because the plaintiff had failed to show that his circumstances were "aligned with the myriad state of affairs of potential absent class members." *Morris,* at 31. This Court also finds that the same circumstances are present in this case. As in *Morris,* this Court is presented with a situation where Martin has allegedly suffered a loss due to the Defendants' failure to notify him of the insurance fee and he thus claims to be a "victim of an omission." As previously stated, it is uncertain whether other putative class members who acquired goods from Defendants were informed of the insurance fee and their attitude concerning the fee. As the *Morris* court stated:

> Some of those potential class members may not have cared about the nature of the insurance charge or some may have bargained for a lower price in consideration of the charge. All of these differences are relevant because there ultimately must be a link between the omission claimed to have been suffered by plaintiff and the damages claimed by each potential absent class member.

*Id.* at 31. This Court again finds the *Morris* court analysis persuasive and takes guidance from the *Morris* court's rationale and finds the typicality requirement under Section 2023 has not been met in the present case.

### 4. Adequacy of Representation

▮▮▮▮ ¶ 18 Section 2023(A)(4) requires that the representative parties "fairly and adequately protect the interests of the class."

---

**2.** Oklahoma's class action statute, 12 O.S.2001, § 2023, closely parallels its federal counterpart. Thus, this Court can look to federal authority for

guidance in its analysis. *Shores v. First City Bank Corp.,* 1984 OK 67, ¶ 5, 689 P.2d 299, 301.

Satisfaction of the adequate representation element depends on two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1, 21 (E.D.Pa.1975).

¶ 19 Defendants do not argue that Martin's attorney is unqualified or incapable of conducting this class action litigation, thereby conceding qualification and capability. Defendants only contend Martin cannot fairly and adequately represent the class. The adequate representation element is met "when the record demonstrates that the class representatives' interests do not conflict with those of the class and that the class representatives will fully and effectively represent the interests of the class." *Ysbrand*, 2003 OK 17 at ¶ 28, 81 P.3d at 628.

¶ 20 Here, Martin testified he understood the duties required of a class representative and he was willing to undertake the responsibilities. No evidence to the contrary being introduced and based on a review of the record, this Court perceives no interests of Martin which could be antagonistic to those of the members of the class. Thus, this Court finds the requirements of Section 2023(A)(4) have been met.

### 5. Predominance

¶ 21 Section 2023(B)(3) requires a finding by the trial court that common issues of law or fact predominate over individual issues. "[T]he predominance question under Rule 23(b)(3) requires the court to consider whether the group seeking class certification seeks to remedy a common legal grievance." *Lobo Exploration Co. v. Amoco Prod. Co.*, 1999 OK CIV APP 112, ¶ 9, 991 P.2d 1048, 1052 (quoting *Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 475 (N.D.Ill.1992)). The predominance of common questions of law or fact as a basis for class certification is a qualitative rather than a quantitative matter. *Greghol Ltd. Partnership v. Oryx Energy Co.*, 1998 OK CIV APP 111, ¶ 6, 959 P.2d 596, 598 (*cert.denied*).

¶ 22 Defendants argue it would be inefficient to dispense with Martin's claims by class action litigation because common questions do not predominate over the individual issues raised by Martin's claims. Specifically, Defendants argue the information regarding the insurance fee was not provided to its customers in a uniform manner. Defendants also argue that individual issues predominate over common issues with respect to its voluntary payment defense.

¶ 23 This Court is again persuaded by the reasoning of *Morris*, in which the court held that the predominance issue was not satisfied because "each individual claim would have to be examined to ascertain whether there was an injury ... [and] individual issues overwhelm common questions among the class." *Morris*, at 33–34. The *Morris* court examined the different causes of action alleged by the plaintiff, Morris. As to the breach of contract theory, the *Morris* court theorized that "the contracts and the nature of defendants' alleged lack of performance thereunder requires detailed attention to each contractual relationship." *Id.* at 33. The *Morris* court again focused on what each individual knew, or did not know, about the insurance fee and the particular circumstances as to each contracting party. *Id.*

¶ 24 Concerning the unjust enrichment cause of action, the *Morris* court noted that not every potential class member may have bestowed an unjust enrichment upon defendants and may not have experienced an ascertainable loss as a result of the alleged failure. *Id.*

¶ 25 The *Morris* court also examined the New Jersey Consumer Fraud Act cause of action, noting that it requires each plaintiff to prove he or she sustained a loss. *Id.* at 34. The *Morris* court stressed that the question was not the measure of damages, but was whether the plaintiff and putative class members had sustained damages at all and whether the defendants received something to which they were not entitled. *Id.* The *Morris* court concluded that "individual proofs predominate over issues applicable to the class as a whole" and the predominance element was not met. *Id.* at 35. Moreover, it should be noted that there is here no

evidence establishing that any claim under the insurance fee was denied.

¶ 26 This Court finds the *Morris* analysis concerning the predominance issue applicable to the facts presented here. Therefore, this Court concludes the predominance requirement of Section 2023(B)(3) has also not been satisfied.

### 5. Superiority

¶ 27 "A class action may be maintained only when it is 'superior to other *available* methods for the fair and efficient adjudication of the controversy.'" *Ysbrand,* 2003 OK 17 at ¶ 24, 81 P.3d at 628 (quoting 12 O.S. 2001, § 2023(B)(3)).

¶ 28 The *Morris* court concluded a class action was not a superior method for adjudication of the plaintiff's alleged grievance. The court noted that "the application of multiple state laws may render the case unmanageable as a class action." *Morris,* at 36. The *Morris* court also stressed that the jurisdiction that has the greatest interest in protecting a plaintiff wronged by a foreign corporation is the home state of the alleged victim. The court stated:

> I conclude that superiority cannot be established because New Jersey has little interest in a long-arm protective scheme for out-of-state victims of consumer fraud, breach of contract, unjust enrichment, or unconscionability. In other words, the location where the alleged damages accrued due to the acquisition of goods or merchandise is the primary focus of consumer protection laws. The locus of the transaction . . . is the jurisdiction that has the greatest governmental interest in having its consumer protection laws applied. Therefore, many different states' laws shall apply in this case because the court shall apply the law of each of the jurisdictions from which potential absent class members acquired their merchandise. This conclusion, of course, creates problems for class certification itself. . . .

*Id.,* at 38–39. The *Morris* court concluded that the superiority requirement was not met. This Court again finds the *Morris* court's rationale persuasive, and determines that the superiority element has not been met in the present case.

### CONCLUSION

¶ 29 This Court recognizes that the opinion by the New Jersey Superior Court in *Morris* is not precedential authority for this Court. However, keeping in mind the similarity in facts between the two cases and the causes of action alleged in each litigation, this Court finds the *Morris* court's analytical, well-reasoned, and well-written opinion persuasive.

¶ 30 This Court finds the trial court abused its discretion in certifying the class for the reason that Martin failed to establish and meet the statutory prerequisites to a class action as herein delineated. The abuse of discretion issue is dispositive and therefore it is unnecessary to address Defendants' remaining allegations of error.

¶ 31 The trial court's Order Certifying Class with Findings of Facts and Conclusions of Law is reversed and this case is remanded to the trial court to proceed consistent with this Opinion.

¶ 32 REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, P.J., concurs, and REIF, J. (sitting by designation), concurs specially.

REIF, J., specially concurring:

¶ 1 This case is on appeal for review of the trial court's order allowing plaintiff's case to proceed as a class action. In the course of addressing the statutory requirements to support certifying this case as a class action, the trial court discussed the underlying claim and theories of recovery. This discussion placed this court in a position to likewise review the underlying claim and theories of recovery. While review of the merits of a case is not normally considered in making the class certification decision, the instant case is certainly one where the class action "cart" should not be placed before the "horse" of the underlying claim.

¶ 2 It is well settled that "determining whether the trial court applied the correct legal standards when it assessed [the existence of] commonality, predominance and

typicality requirements for class certification necessitates identification and review of the core liability issues which the class asserts." *Scoufos v. State Farm Fire and Casualty Co.*, 2001 OK 113, ¶ 1, 41 P.3d 366, 367. An appellate court "review[s] de novo whether the trial court applied the correct legal standard to grant certification [and where] the trial court incorrectly decided a question of law in certifying the class, reversal will be ordered." *Id.*

¶ 3 Plaintiff endeavors to make various legal wrongs out of a 50¢ "insurance fee" that was charged by defendant seller in connection with a direct order and shipment delivery of merchandise. Plaintiff asserts that the customer who pays this insurance fee has no risk of loss to insure and that the seller herein did not use the 50¢ fee to purchase insurance for the seller's risk of loss. The seller has explained that it self-insures the risk of loss imposed on it by the Uniform Commercial Code and that the 50¢ fee defers the cost of its self-insurance to *immediately* replace lost or damaged goods. Plaintiff dismisses this explanation by asserting that replacement costs are a cost of doing business that should be reflected in the price, and not in a deceptive fee for which a buyer receives no value in return. While the plaintiff's opinion of cost allocation and pricing is no doubt worthy of respect, it does not rise to the level of a legal standard upon which to base a legal wrong.

¶ 4 Even though the Uniform Commercial Code places the risk of loss on the seller, the UCC does not place the risk of loss on the seller cost free. While including replacement costs in the price of the merchandise is cer-

tainly one way in which a seller can cover the costs associated with this risk of loss, it is not the only way a seller may do so. More importantly, this is not mandated by the UCC. Nothing in the UCC or any other provision of law expressly prohibits a seller from covering the cost of this risk by self-insurance. There is simply no legal wrong in charging a fee to cover the costs associated with a risk of loss imposed by the UCC.

¶ 5 There is likewise no legal wrong in calling it an "insurance fee." Seller made no promise to purchase insurance with the fee it was charging. The disclosed purpose of the fee was for the immediate replacement of damaged or lost merchandise. Considering the fact the UCC does not require the *immediate* replacement of damaged or lost merchandise, the buyer does indeed receive a valuable promise in return for the fee. Finally, there is no indication that replacements have not been "immediate" so as to make the "insurance fee" a false/fraudulent charge.

¶ 6 In a few words, this class action suit is not supported by a legally cognizable theory of liability. The decision that the "insurance fee" in question is an economic burden that consumers should not bear in doing business with the seller (and others like the seller) is one that should be made in the market place and not in the courthouse.