2011 OK CIV APP 24

Kimberly GENTRY, individually and on behalf of all others similarly situated, Plaintiff/Appellant,

v.

COTTON ELECTRIC COOPERATIVE, INC., an Oklahoma corporation, Defendant/Appellee.

No. 107,019.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 26, 2010.

Certiorari Denied Feb. 14, 2011.

Bradley C. West, Terry W. West, Gregg W. Luther, The West Law Firm, Shawnee, OK, for Plaintiff/Appellant.

Richard E. Hornbeek, Daniel E. Bryan, III, Hornbeek, Vitali & Braun, P.L.L.C., Oklahoma City, OK, and J.W. Doolin, Lawton, OK, for Defendant/Appellee.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Kimberly Gentry appeals the denial of her motion for class certification. The district court denied her motion finding that she had failed to satisfy three of the five prerequisites for certification found in 12 O.S.2001 § 2023(A) and (B). We reverse.

## BACKGROUND

¶ 2 On March 1, 2006, a fire started in Stephens County that eventually covered more than 13,000 acres. The fire destroyed approximately forty-eight residences, numerous other structures and substantial personal property, including property owned by Gentry. Gentry sued Cotton Electric Cooperative, Inc. (CEC) alleging the fire was caused by CEC's defective electric transmission line. Gentry moved to certify a class of plaintiffs pursuant to 12 O.S.2001 § 2023. Gentry's appeal is from the district court's order of March 26, 2009, denying that motion.[1]

## STANDARD OF REVIEW

¶ 3 At the time the district court's order denying certification was entered, the applicable standard of review was abuse of discretion. *Burgess v. Farmers Ins. Co., Inc.*, 2006 OK 66, ¶ 9, 151 P.3d 92, 98 (citing *Shores v. First City Bank Corp.*, 1984 OK 67, 689 P.2d 299); *Mattoon v. City of Norman*, 1981 OK 92, ¶¶ 25–26, 633 P.2d 735, 740–41.

---

1. CEC's motion for oral argument is denied. The Court previously heard argument in this case on September 16, 2010.

However, the standard of review for this appeal requires our interpretation of an amendment to section 2023 that became effective November 1, 2009. Paragraph C of that statute now provides:

C. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDG- MENT; ACTIONS CONDUCTED PAR- TIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order entered on or after November 1, 2009, that certifies a class action shall define the class and the class claims, issues or defenses, and shall appoint class counsel under subsection F of this section. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. The order described in paragraph 1 of this subsection shall be subject to a de novo standard of review by any appellate court reviewing the order. While the appeal of the order on class certification is pending, the trial court shall retain sufficient jurisdiction over the case to consider and implement a settlement of the action should one be reached between the parties and discovery as to the class claims shall be stayed pending resolution of the appeal.

12 O.S. Supp.2009 § 2023(C). In essence, the amendment added the second sentence of paragraph 1 and all of paragraph 2, providing for a *de novo* standard of review for class certification orders. CEC argues that the first sentence of paragraph 2 refers to the second sentence of paragraph 1. Therefore, CEC contends that *de novo* review is required only for class certification orders entered after November 1, 2009. We find that construction too narrow.

¶ 4 There are three sentences in paragraph 1, each describing class certification orders. The language of paragraph 2, "the order described in paragraph 1," is not limited to the orders described only in the second sentence of paragraph 1. Clearly, had the Legislature intended to subject to *de novo* review only certification orders entered after November 1, 2009, it could have substituted "orders entered after November 1, 2009," for "the order described in paragraph 1." The fact that the Legislature did not so limit paragraph 2 reflects an intention to subject all certification orders to *de novo* review. "To ascertain intent, we look to the language of the pertinent statute. We presume that the Legislature intends what it expresses." *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, 803 (citations omitted). "When the Legislature has clearly expressed its intent, the use of additional rules of construction are almost always unnecessary and a statute will be applied as written." *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 13, 33 P.3d 302, 307. Further, CEC's construction would require application of two standards of review: the abuse of discretion standard for any unresolved certification order entered prior to November 1, 2009, and for orders denying class certification entered after that date, but a *de novo* standard for orders certifying a class entered after November 1, 2009. CEC has not advanced any principle of statutory construction that would support this interpretation, even assuming such interpretation would be constitutionally permissible.[2] We find that the Legislature intended section 2023(C) to dictate the standard of review in all appeals decided after November 1, 2009, regardless of when the order appealed was entered.

¶ 5 So construed, the issue is whether that legislative intent can be implemented. Absent some contravening rule, an appellate court applies the law in effect at

---

2. Oklahoma's constitutionally guaranteed equal protection requires that a statutory "classification rest on *bona fide,* not feigned differences; that the distinction have some relevance to the purpose for which the classification is made; and that the different treatments are not arbitrary." *Presley v. Bd. of County Comm'rs,* 1999 OK 45, ¶ 9, 981 P.2d 309, 312–13. CEC's con- struction would result in disparate and seemingly arbitrary application of a different standard of review depending on whether the movant won or lost the certification motion. Where possible, a statute will be construed to avoid unconstitutionality. *See Rivas v. Parkland Manor,* 2000 OK 68, ¶ 6, 12 P.3d 452, 455.

the time the appeal is decided. "Legislation that is general in its terms and impacts only matters of procedure is presumed to be applicable to all actions, even those that are pending." *Cole v. Silverado Foods, Inc.,* 2003 OK 81, ¶ 8, 78 P.3d 542, 546. No Oklahoma decision has directly addressed whether the standard of review is procedural or substantive.

■■■ ¶ 6 Nonetheless, appellate courts are courts of limited jurisdiction. Okla. Const. art. 7, § 4. The standard of review prescribes an appellate court's scope of review, and therefore limits its power. Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels,* 74 Marq. L.Rev. 231, 232 (1991). The standard of review allocates judicial decision making between trial and appellate courts by defining the deference the appellate court must give to decisions of the trial court. "An issue of law decided by a trial court is reviewed by this Court *de novo.* On the other hand, an adjudication of a fact by a lower tribunal is reviewed by different [deferential] standards according to the type of controversy and type of adjudication made." *Christian v. Gray,* 2003 OK 10, ¶ 41, 65 P.3d 591, 608 (citations omitted); *See also Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 114–16, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008). A standard of review is dictated either "by a long history of appellate practice," or "explicit statutory command." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). Clearly, the Legislature can establish the standard of review for a particular matter. *See Parks v. Norman Mun. Hosp.,* 1984 OK 53, ¶ 12, 684 P.2d 548, 551–52 (applying the any-competent-evidence standard of review to appeals of factual determinations by the Workers' Compensation court and *de novo* review of legal issues pursuant to section 26 of the 1977 amendments). *See also U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (discussing the different standards of review specified by Congress with respect to federal criminal sentencing issues). Here, we deal with a clear legislative command to apply the *de novo* standard of review after November 1, 2009.

¶ 7 This case was filed March 3, 2008. The order denying Gentry's motion to certify was filed March 26, 2009. Her petition in error was filed April 27, 2009. All briefing was filed after November 1, 2009, and addressed the 2009 amendment to section 2023. In addition, the parties addressed the applicable standard of review during oral argument. Although different from the standard of review applicable when the certification order was filed, the standard of review in effect when this appeal was ready for decision is provided in section 2023(C)(2). As previously discussed, the only reasonable interpretation of the amended statute requires that we apply the *de novo* standard.

■■■ ¶ 8 That result would obtain if we were to treat the issue as whether to apply the 2009 amendment retroactively. As a general rule, and absent legislative intent to the contrary, statutes are applied prospectively. *Phillips v. H.A. Marr Grocery Co.,* 1956 OK 104, ¶ 11, 295 P.2d 765, 768. The long-recognized exception to that rule is:

> No one has a vested right in any particular mode of procedure for the enforcement or defense of his rights. Hence the general rule that statutes will be construed to be prospective only does not apply to statutes affecting procedure; but such statutes, unless the contrary intention is clearly expressed or implied, apply to all actions falling within their terms, whether the right of action existed before or accrued after the enactment.

*Shelby–Downard Asphalt Co. v. Enyart,* 1918 OK 50, ¶ 0, 67 Okla. 237, 170 P. 708, 708 (Syllabus of the Court). If the challenged amendment is substantive, it must be given a prospective application; if it is procedural it determines the standard of review in this case. *See Scruggs v. Edwards,* 2007 OK 6, ¶ 8, 154 P.3d 1257, 1261. Although Oklahoma has not specifically addressed whether the standard of review is procedural or substantive, other jurisdictions conclude it is procedural.[3]

---

3. *See, e.g., U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *State v. Thurman,* 846 P.2d 1256 (Utah 1993) (for the view that the standard of review is procedural).

¶ 9 Further, at least when constitutional rights are at issue, the correct standard of review will be applied in pending cases even though a different standard had been previously used. *See In the Matter of S.B.C.*, 2002 OK 83, 64 P.3d 1080 (announcing the applicability of the clear and convincing standard of proof and incorporating that into the appellate standard of review for termination of parental rights cases). We find no reason to apply a different rule when nonconstitutional rights are at issue.

¶ 10 CEC has pointed to no right vested at the time Gentry's class certification motion was decided that affected the standard for appellate review of that decision, or shown that the standard of review is substantive rather than procedural. For this appeal, we apply the *de novo* standard directed by 12 O.S. Supp.2009 § 2023(C)(2), and review the order denying class certification without deference to the district court's determination.

## ANALYSIS

¶ 11 Oklahoma's class action statute provides, in part:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

12 O.S. Supp.2009 § 2023(A). Certification of a class is appropriate "only if" the proposed class representatives demonstrate that the requested class satisfies each of the four requirements of section 2023(A): numerosity, commonality, typicality and adequacy of representation. In addition, class representatives must meet one of the three section 2023(B) requirements:

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

\* \* \* \*

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

12 O.S. Supp.2009 § 2023(B). In its order denying class certification, the district court found that Gentry failed to satisfy section 2023(A)(2) commonality, (A)(3) typicality, and (B)(3) predominance and superiority.

### I. Commonality/Predominance

¶ 12 Determining whether there are issues "of law or fact common to the class," 12 O.S.2001 § 2023(A)(2), and, if so, whether those issues "predominate over any questions affecting only individual members," 12 O.S.2001 § 2023(B)(3), involves considerations that, although distinctive in their focus, often involve essentially the same or closely related analyses. Determining the existence of common issues of law and fact in this case is straightforward: did CEC's transmission line cause this fire, and, if so, is CEC liable for the damages caused. Whether that issue predominates is the crux of the matter. "The predominance of common questions of law or fact as a basis for class certification is a qualitative rather than a quantitative matter." *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 19, 9 P.3d 683, 690 (citing *Greghol Ltd. P'ship v.*

*Oryx Energy Co.*, 1998 OK CIV APP 111, ¶ 6, 959 P.2d 596, 599 (*cert. denied*, July 8, 1998)). In this case, the cause of the fire is the central issue. If CEC was not responsible for the fire, that is the end of the matter. If CEC did cause the fire, what remains to be determined is the amount of each class member's damages.

¶ 13 In support of its position that any common issues do not satisfy the predominance requirement, CEC argues that it may, or does have, mitigation defenses to class members' property damage claims, and contributory negligence defenses to personal injury claims.[4] This Opinion does not address the existence or merit of those defenses, nor does it preclude CEC from asserting those defenses to reduce its liability as to any individual claim by any class member. At the same time, any defense to any individual claim does not diminish the commonality of the fundamental issue, which is CEC's liability in the first instance for the damages caused by this fire.

¶ 14 CEC also argues that any common issues do not predominate because each putative class member's damages would be different. Therefore, determining the amount of each class member's individual damages would require "a large set of extensive mini-trials." CEC does not explain why extensive mini-trials would be inferior to an identical number of "full blown" trials. Nonetheless, "[e]ven though damages amounts may vary, common questions predominate where the acts or omissions are the same." *Burgess*, 2006 OK 66 at ¶ 17, 151 P.3d at 101. *See Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, ¶¶ 343–44, 969 P.2d 337, 345; *Perry v. Meek*, 1980 OK 151, ¶ 15, 618 P.2d 934, 938–39; Here, CEC's acts or omissions with respect to its transmission line will establish its liability. We find that issues related to the cause of the fire and CEC's liability therefore are not only common to the claims of all class members, but also that those issues predominate. Gentry has satisfied the requirements of sections 2023(A)(2) and (B)(3).

### II. Typicality

¶ 15 "The typicality requirement is satisfied '[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented ... irrespective of varying legal fact patterns which underlie individual claims.'" *Martin v. Hanover Direct, Inc.*, 2006 OK CIV APP 33, ¶ 16, 135 P.3d 251, 256 (quoting *Melot v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2004 OK CIV APP 25, ¶ 16, 87 P.3d 644, 647). Gentry alleges three types of damage caused by the fire: damage to real property, damage to personal property and personal injury. Gentry incurred damage to her personal property. We find no relevant distinction between her claim and putative class members who claim only damage to real property. In this respect, Gentry has satisfied the typicality requirement as to claims for damage to real or personal property.

¶ 16 Whether Gentry can satisfy section 2023(A)(3) with respect to any claims for personal injury cannot be determined from this record. The record is relatively sparse with respect to the number of class members who might have suffered personal injuries, the nature of those injuries, or the cause of the injuries, *e.g.*, smoke inhalation versus burn injuries. "An appellate court will not make first-instance" legal rulings. *Bivins v. State ex rel. Okla. Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464. Whether certification of a class of plaintiffs who incurred personal injuries as a result of this fire should be granted is for the district court to determine on remand without prejudice to either party's right to appeal that decision.

### III. Superiority

¶ 17 Arguing that a class action is not a superior method for resolving the claims of people injured by the fire, CEC relies on a decision from the United States District Court for the Western District of Arkansas. *Bradford v. Union Pac. R.R. Co.*, 491 F. Supp.2d 831 (W.D.Ark.2007). *Brad-*

---

4. But see *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 16, 689 P.2d 299, 304 ("The claim that there exists sufficient individual statute of limita-tions defenses to prevent class action certification has not found much favor with the courts dealing with these questions.").

*ford* was decided pursuant to the federal equivalent of section 2023 and, as CEC correctly points out, Oklahoma courts may rely on federal authority in interpreting section 2023. *See Mattoon v. City of Norman,* 1981 OK 92, ¶ 8, 633 P.2d 735, 737. As relevant to this case, *Bradford* involved a train wreck that caused a fire, a smoke plume and the evacuation of people within one square mile. The court refused to certify the class proposed for property damage and personal injury claimants although finding that both numerosity and commonality requirements had been satisfied.[5]

¶ 18 The personal injury claimants alleged injury from exposure to the smoke plume. The court refused to certify the personal injury class because, among other reasons, individual issues regarding the amount of smoke exposure, medical history, susceptibility and so forth were too individualized to warrant class treatment. Again, it is not certain from this record what personal injuries are claimed, how many potential class members suffered personal injuries, how the proposed class would be defined, whether certification of a sub-class of personal injury plaintiffs is appropriate, and whether Gentry is able to represent class members claiming personal injury. Those issues must first be resolved by the district court.

¶ 19 With respect to the *Bradford* property damage class, the proposed representative was the only person whose home was destroyed by the fire and the court found his claim was not only unique, but also not typical of the other class members' property damage claims. The facts in the *Bradford* case are materially different. Here, the fire burned 13,000 acres, between 30 and 48 residences, other structures, numerous vehicles and a significant amount of personal property. It may be that separate sub-classes should be certified for real and personal property claimants and, if so, Gentry may not be an appropriate representative of the real property claimants. Nonetheless, those issues can be resolved in the district court.

¶ 20 More importantly, it appears that the amount of damages suffered in many of the claims in this case may be relatively minor. This is, in fact, the purpose for the class action remedy. "Class action lawsuits are designed to enable plaintiffs ... to 'vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.'" *Burgess,* 2006 OK 66 at ¶ 20, 151 P.3d at 102 (quoting *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980)).

¶ 21 Further, section 2023(B)(3) requires that: "An alternate method for adjudication must be *available* in order for it to be superior." *Ysbrand v. DaimlerChrysler Corp.,* 2003 OK 17, ¶ 24, 81 P.3d 618, 628. The only alternative to a class action is separate litigation of the individual claim of each potential class member. CEC has not shown how this alternative would be superior to a class action. "The pragmatically correct action, in the face of a close question as to certification, has been said to sustain certification because if it develops later during the course of the trial that the order is ill-advised, the order is always (prior to judgment on the merits,) subject to modification." *Perry v. Meek,* 1980 OK 151, ¶ 19, 618 P.2d 934, 940. "[I]f later developments occur at trial, which demonstrate that the [certification] order is ill-advised, the order may be modified prior to a determination on the merits." *Burgess,* 2006 OK 66 at ¶ 9, 151 P.3d at 98 (citing *Ysbrand,* 2003 OK 17 at ¶ 5, 81 P.3d at 623).

## IV. Numerosity

¶ 22 Although the district court found that the numerosity requirement had been satisfied, CEC argues on appeal that Gentry failed to prove that the potential class members were too numerous to pursue individual law suits. The focus of this argument is that, after three years of discovery, Gentry has been unable to identify anyone other than herself who sustained damage. We do not find that to be a class plaintiff's burden. Gentry contends that the fire damaged real

---

5. In *Bradford,* the railroad immediately established a claims center and eventually settled eighty-five percent of the 1,100 claims filed before the motion to certify was decided.

and personal property owned by more than one hundred individuals. Like the railroad in *Bradford*, CEC points to the limited number (nine) of individual lawsuits filed other than Gentry's as evidence that the number of class members is much less than the number claimed. Gentry argues that many property damage claimants may have been covered by insurance, and that their claims for deductibles would be too small to pursue in individual cases. She also contends that other property damage claims may be too small to warrant individual prosecution. It is not the class representative's burden to prove with certainty the number of potential class members in pursuit of class certification. It is sufficient that the allegations as to numerosity appear reasonable with respect to the nature of the claim. In this regard, we find *Bradford* persuasive. In Oklahoma, 100 is enough. *See Black Hawk*, 1998 OK 70 at ¶ 17, 969 P.2d at 343 ("The numerosity test is satisfied by numbers alone when the size of the class is in the hundreds.").

## CONCLUSION

¶ 23 The 2009 amendment to Title 12 O.S. § 2023(C) requires application of a *de novo* standard of review after November 1, 2009, for appeals of decisions on class certification motions. Gentry has established the requirements necessary to initially certify a class of personal property and real property claimants. Whether she can satisfy those requirements with respect to personal injury claimants remains to be determined on remand. The order denying Gentry's motion to certify a class action in this case is reversed, and this case is remanded for further proceedings consistent with this Opinion.

¶ 24 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and BARNES, J., concur.